1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10   JESSE HARROD,                    )   CASE NO. CV 03-6598-CJC (PJW)
                                      )
11              Petitioner,           )
                                      )   FINAL REPORT AND RECOMMENDATION
12        v.                          )   OF UNITED STATES MAGISTRATE JUDGE
                                      )
13   A.K. SCRIBNER, WARDEN,           )
                                      )
14              Respondent.           )
     _____)

15

16        This Final Report and Recommendation is submitted to the Hon.

17   Cormac J. Carney, United States District Judge, pursuant to 28 U.S.C.

18   § 636 and General Order 05-07 of the United States District Court for

19   the Central District of California.  For the reasons discussed below,

20   it is recommended that the Petition be denied and the action be

21   dismissed with prejudice.[1]

22

23

24   _____

25        [1]  This Final Report and Recommendation has been issued to
     address arguments raised by Petitioner in his Objections to the
26   original Report and Recommendation and his three supplements to those
     Objections.  (Doc. Nos. 190-93; *see*, *infra*, footnotes 2 and 4.)
27   Petitioner was not given an opportunity to file Objections to the
     Final Report and Recommendation because the Court's reasoning and
28   ultimate decision remain unchanged.

I.

SUMMARY OF PROCEEDINGS

A.  <u>State Court Proceedings</u>

In 2000, Petitioner was convicted in Los Angeles County Superior Court of first-degree murder.  (Clerk's Transcript ("CT") 154-57.)  He was sentenced to 27 years to life in prison.  (CT 165-66.)  He appealed to the California Court of Appeal, which affirmed his conviction and sentence.  (Lodgments A3-A7.)  He then filed a petition for review in the California Supreme Court, which was denied.  (Lodgments B1-B2.)  Thereafter, he filed a habeas corpus petition in the California Supreme Court, which was also denied.  (Lodgments E1-E2.)

B.  <u>Federal Court Proceedings</u>

In September 2003, Petitioner, proceeding *pro se*, filed a Petition for Writ of Habeas Corpus in this court, pursuant to 28 U.S.C. § 2254.  (Docket No. 1.)  In January 2006, after being granted a stay and abeyance to return to state court to exhaust his claims, Petitioner, with the assistance of counsel, filed an amended petition, raising twelve claims for relief, including a *Batson* claim.  (Docket Nos. 45, 69.)  In June 2008, the Court denied the Petition, rejecting Petitioner's *Batson* claim because Petitioner had not met his burden of showing that the prosecutor had struck two black jurors because of their race.  In so ruling, the Court attempted to perform a comparative analysis of the jurors but was hampered by the fact that only a portion of the voir dire proceedings had been transcribed and the remainder of the court reporter's notes had purportedly been lost.  (*See* June 4, 2008 Report and Recommendation at p. 12.)

2

1    Petitioner appealed.  In April 2010, the Ninth Circuit Court of
2    Appeals affirmed, noting that the "limited" and "sparse" record did
3    not support a finding of racial discrimination.  *Harrod v. Scribner*,
4    392 F. App'x 603, 604 (9th Cir. 2010).  On January 13, 2015, however,
5    the circuit court withdrew its 2010 opinion and remanded the case to
6    the district court for further consideration of Petitioner's *Batson*
7    claim "[i]n light of the newly uncovered transcript of the June 30,
8    2000 voir dire proceedings, as well as this Court's opinion in
9    *Jamerson v. Runnels*, 713 F.3d 1218 (9th Cir. 2013)."  *Harrod v.
10   Scribner*, 590 F. App'x 679 (9th Cir. 2015).[2]

11   _____

12       [2] According to Respondent, the California Court of Appeal did
not have the entire voir dire transcript before it when it decided the
13   *Batson* issue.  (*See* Supplemental Brief RE *Batson*: Memorandum of Points
and Authorities at 7 n.11).  Respondent does not argue that this Court
14   cannot consider the entire transcript in rendering a decision and such
an argument would not be persuasive in light of the Ninth Circuit's
15   decision in *Jamerson v. Runnels*, 713 F.3d 1218, 1227 (9th Cir. 2013)
16   ("[N]othing in *Pinholster* inherently limits this court's review to
evidence that the state appellate court--as opposed to the state trial
17   court--considered.").  Thus, the Court will consider the entire
transcript because the entire voir dire was before the trial court
18   when it denied Petitioner's *Batson* motion.  *See McDaniels v. Kirkland,*
19   813 F.3d 770, 780 (9th Cir. 2015) ("Federal courts sitting in habeas
may consider the entire state-court record, not merely those materials
20   that were presented to state appellate courts."); *Jamerson*, 713 F.3d
at 1227 (holding photographs showing jurors' race were admissible in
21   habeas case because the photographs "merely reconstruct[ed] facts
visible to the state trial court that ruled on the petitioner's *Batson*
22   challenge").
        In his Objections, Petitioner asks for an evidentiary hearing to
23   allow the Court to "examine the trial file of the prosecutor" and
obtain the "testimony of the prosecutor" to further explore his
24   justifications for the peremptory strikes.  (Objections at 3-7.)  Such
25   a hearing is precluded by the Supreme Court's rulings in *Cullen v.
Pinholster*, 563 U.S. 170 (2011) and *Harrington v. Richter*, 562 U.S. 86
26   (2011).  *See Ballinger v. Prelesnik*, 709 F.3d 558, 562 (6th Cir. 2013)
27   ("While allowing a petitioner to supplement an otherwise sparse trial
court record may be appealing, especially where he diligently sought
28   to do so in state court, the plain language of *Pinholster* and
*Harrington* precludes it."); *see also Castellanos v. Small*, 766 F.3d

3

II.

STANDARD OF REVIEW

The standard of review in this case is set forth in 28 U.S.C. § 2254:

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court
> shall not be granted with respect to any claim that was
> adjudicated on the merits in State court proceedings unless
> the adjudication of the claim--
>
> (1)  resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly established
> Federal law, as determined by the Supreme Court of the
> United States; or
>
> (2)  resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established federal law if it applies a rule that contradicts Supreme Court case law or if it reaches a conclusion different from the Supreme Court's

1137, 1148 (9th Cir. 2014) (finding *Pinholster* precludes consideration of "post hoc justifications" for peremptory challenges in *Batson* cases because federal habeas review is "limited to the evidence presented in the State court proceeding" (internal quotations omitted)). Petitioner's reliance on *Foster v. Chapman*, 136 S. Ct. 1737 (2016)--a case in which the Supreme Court found purposeful discrimination in jury selection based, in part, on notes from the prosecutor's file evidencing discrimination--is inapposite.  In that case, the notes and subsequent affidavits had been considered by the state court. Further, because of the procedural posture of that case, the Supreme Court was not bound by AEDPA and its strictures on supplementing the record.  Accordingly, Petitioner's request for an evidentiary hearing is denied.

in a case that involves facts that are materially indistinguishable. *Bell v. Cone*, 535 U.S. 685, 694 (2002).  To establish that the state court unreasonably applied federal law, a petitioner must show that the state court's application of Supreme Court precedent to the facts of his case was not only incorrect but objectively unreasonable. *Renico v. Lett*, 559 U.S. 766, 773 (2010).  Where no decision of the Supreme Court has squarely decided an issue, a state court's adjudication of that issue cannot result in a decision that is contrary to, or an unreasonable application of, clearly established Supreme Court precedent.  *See Harrington,* 562 U.S. at 101 (2011).

Petitioner raised his *Batson* claim in his petition for review in the California Supreme Court but that court did not explain its reasons for denying it.  (Lodgments B1–B2.)  The appellate court, however, did (Lodgment A7), which this Court presumes is the basis for the state supreme court's subsequent decision denying the claim.  *See Johnson v. Williams*, 133 S. Ct. 1088, 1094 n.1 (2013) (approving reviewing court's "look through" of state supreme court's silent denial to last reasoned state-court decision).  In rejecting this claim, the California Court of Appeal concluded that Petitioner had not established that the prosecutor was motivated by race when he struck two black jurors.  (Lodgment A7 at 5-9.)  As the Ninth Circuit has explained, this finding is entitled to a high degree of deference on federal habeas corpus review:

> [T]he state court's [*Batson*] decision will be upheld unless it was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  Indeed, in evaluating habeas petitions premised on a *Batson* violation, "our

standard is doubly deferential: unless the state appellate court was objectively unreasonable in concluding that a trial court's credibility determination was supported by substantial evidence, we must uphold it." *Briggs [v. Grounds]*, 682 F.3d at 1170 (citing *Rice [v. Collins]*, 546 U.S. at 338-42, 126 S.Ct. 969). This is because the question of discriminatory intent "largely will turn on evaluation of credibility" and "evaluation of the prosecutor's state of mind based on demeanor and credibility lies peculiarly within a trial judge's province." *Hernandez [v. New York]*, 500 U.S. at 365, 111 S.Ct. 1859 (internal quotation marks and citations omitted).

*Jamerson*, 713 F.3d at 1225.

The application of this standard is somewhat convoluted in this case, however, because the Court is required to conduct a comparative analysis even though the state appellate court did not, while still applying AEDPA deference to the state court's ultimate conclusion that there was no violation.[3] *Id.* at 1225 & n.2; *see also McDaniels v. Kirkland*, 760 F.3d 933, 939-40 (9th Cir. 2014).[4]

_____

[3] On appeal, the California Court of Appeal held that a comparative analysis was unnecessary because the prosecutor had given legitimate, race-neutral reasons for challenging the jurors. (Lodgment A7 at 9.)

[4] In his Objections, Petitioner argues that the doubly deferential standard of review should not apply here because the state appellate court "failed to perform comparative jury analysis" based on the complete record. (Objections at 10.) The Ninth Circuit has rejected this argument. *See McDaniels*, 760 F.3d at 939 ("We have not refused to accord AEDPA deference in a habeas proceeding based solely on a state court's failure to apply comparative juror analysis."); *see also Cook v. LaMarque*, 593 F.3d 810, 816 (9th Cir. 2010) (applying AEDPA deference to *Batson* claim even when conducting comparative juror analysis for the first time). The law is clear that this Court must

1                                    III.

2                                DISCUSSION

3          Petitioner claims that his constitutional rights were violated

4     when the prosecutor used two of his first six peremptory challenges to

5     remove black jurors.  (Petition at 6-6A.)  He argues that the

6     prosecutor's reasons for removing the jurors were a pretext for racial

7     discrimination.  (October 29, 2015 Reply Brief ("Reply Brief") at 1.)

8     For the following reasons, the Court finds that there is no merit to

9     this claim.[5]

10    A.    Factual Background

11         On the second day of voir dire, defense counsel accused the

12    prosecutor of purposefully striking black jurors on account of their

13    race.  (2 VDRT 137.)  Defense counsel noted that the prosecutor had

14    used two of his six peremptory challenges to remove black jurors from

15    the panel and argued that this demonstrated a prima facie case of

16    discrimination, even though two black jurors remained on the panel.

17    (2 VDRT 137-38.)  The trial court agreed and directed the prosecutor

18    to explain his reasons for striking the black jurors.[6]  (2 VDRT 138-

19    39.)

20

21

_____

22    give deference to any state court decision issued on the merits of the
      claim, which is the case here.  *See Bible v. Ryan*, 571 F.3d 860, 869
23    (9th Cir. 2009) ("[W]e apply AEDPA deference to any state court
      decision on the merits.").
24
25         [5]  The voir dire took place over two days, June 29, 2000 and June
      30, 2000, and was transcribed in separate volumes.  The Court will
26    refer to the June 29, 2000 voir dire transcript as "1 VDRT" and the
      June 30, 2000 transcript as "2 VDRT."
27
28         [6]  Although the record does not specifically identify the race of
      any of the potential jurors, it appears from the voir dire transcripts
      that the two excused black jurors were Juror Nos. 8641 and 8071.

                                       7

1    As to the first one, Juror No. 8641, the prosecutor told the
2  court:

3       [O]ne thing that concerned me was the post office.  And I
4       don't keep on people from the post office.  I also saw he
5       had a book in his possession of music.  [Petitioner] is
6       involved in that business.  [¶]  Also, he was chewing gum
7       all the time in court.  That's another fact.
8  (2 VDRT 139.)

9    As to the second, Juror No. 8071, the prosecutor told the court:
10      I can tell the court I planned on keeping her until I
11      excused [the other black juror].  [¶]  When I excused [the
12      other black juror], she looked at me in a dissatisfied way.
13      I thought she was going to hold it against me.
14  (2 VDRT 139.)

15   The court then asked the prosecutor what he meant by that and the
16  prosecutor explained:

17      I think she thought I kicked the individual because he was an
18      African American.  I saw it on her face and she wouldn't look at
19      me afterwards.  And she looked like she was above it all, and
20      that's why I kicked her.
21  (2 VDRT 139-40.)

22   Defense counsel responded:

23      I did not see anything that [the prosecutor] observed.  I didn't
24      see the look on the juror's face, and [the prosecutor] did
25      indicate to me previously that this look had been made.  After
26      looking at the jury and hearing that, she seemed to have a
27      natural look on her face, and not the happiest person in the
28

8

1    world.   [¶]   I don't think that that look in and of itself

2    overcomes the challenge.

3                              * * *

4    A look made or what [the prosecutor] believes this juror

5    might have thought, is the exact issue why these challenges

6    --why the objection was made, and why the court requires

7    some objective, more concrete reasoning.

8    (2 VDRT 140.)

9         The trial court found that the prosecutor's explanations

10   "dispelled any inference of race based challenge[s]" and denied the

11   motion.  (2 VDRT 141.)   The prosecutor then used one additional

12   peremptory challenge--presumably on a non-black juror based on the

13   fact that defense counsel did not object--and, thereafter, accepted

14   the panel without using all of his peremptory challenges.  (2 VDRT

15   149, 158, 166, 172, 175.)  The empaneled jury had at least one

16   African-American.   Thereafter, the case proceeded to trial and

17   Petitioner was convicted.   He appealed and raised the *Batson* issue.

18   The California Court of Appeal rejected that claim, finding that the

19   prosecutor's strikes were supported by legitimate, race-neutral

20   reasons.  (Lodgment A7 at 7-9.)

21   B.   Applicable Law

22        The discriminatory use of a peremptory challenge to exclude a

23   juror because of his race violates the Equal Protection Clause of the

24   United States Constitution.  *Hernandez v. New York*, 500 U.S. 352, 358-

25   59 (1991); *Batson*, 476 U.S. at 89-90.  In evaluating a defendant's

26   claim that a prosecutor struck a juror because of his race, courts use

27   a three-step approach.  First, the defendant must demonstrate that the

28   totality of the circumstances raises an inference that the strike was

                                  9

motivated by race. *Boyd v. Newland*, 467 F.3d 1139, 1143 (9th Cir. 2006) (as amended). If so, the prosecutor is called upon to provide a race neutral reason for the strike. The court then evaluates the "facial validity" of the prosecutor's race-neutral reason, keeping in mind that it need not be "persuasive, or even plausible," but must simply be "race-neutral." *See Purkett v. Elem*, 514 U.S. 765, 768-69 (1995) (per curiam) ("[A] 'legitimate reason' is not a reason that makes sense, but a reason that does not deny equal protection"). Thereafter, the trial court must determine whether defense counsel has carried his burden of proving purposeful discrimination by showing that the prosecutor's strike was "motivated in substantial part by discriminatory intent." *Id*. at 768; *Cook v. LaMarque*, 593 F.3d 810, 815 (9th Cir. 2010).

In evaluating the trial court's finding that there was no *Batson* violation, the Court performs a comparative analysis to determine whether the prosecutor treated different jurors of different races differently, e.g., he kept non-black jurors on the panel who shared similar characteristics with black jurors who were struck based on those characteristics. *See, e.g., Miller-El v. Dretke*, 545 U.S. 231, 241-52 (2005) (using comparative analysis to determine whether the prosecutor had been motivated by racial bias in exercising peremptory challenges); *Briggs v. Grounds*, 682 F.3d 1165, 1170 (9th Cir. 2012) (finding courts should "compar[e] African American panelists who were struck with those non-African American panelists who were allowed to serve"). Disparate treatment of similarly situated jurors may indicate that a prosecutor's facially race-neutral reasons were a pretext for discrimination. *See Snyder v. Louisiana*, 552 U.S. 472, 482–85 (2008). Ultimately, the court need not believe that the

proffered reason for the strike represented sound strategic judgment, but only that the strike "relate[d] to the case to be tried" and that the justification "should be believed." *Jamerson*, 713 F.3d at 1224 (internal quotation marks omitted). In evaluating *Batson* claims, the Court is mindful that the trial judge is in the best position to evaluate the credibility of the prosecutor and, as such, his or her findings are entitled to deference. *Id.; see also Sifuentes v. Brazelton*, 815 F.3d 490, 498-99 (9th Cir. 2016) (examining several Supreme Court cases requiring appellate courts to "uphold the trial court's credibility determination, unless it is clearly erroneous" (internal quotations omitted)).

Here, there is no issue regarding the first step, as the trial court found a prima facie showing of discrimination as to both jurors and the prosecutor was required to explain the reasons for the challenges. *Hernandez*, 500 U.S. at 359. Thus, the Court need only decide whether the trial court erred in finding that the prosecutor's explanations were race-neutral and that Petitioner had not demonstrated purposeful discrimination.

C.   <u>Juror No. 8641</u>

During voir dire, Juror No. 8641 told the court that he had worked for the postal service as a letter carrier for five years. (1 VDRT 398.) He admitted that he had been arrested for trespassing 13 years earlier, when he was 18 years old. (1 VDRT 399-400.) He explained that he was simply "walking down the street" and a "new" officer arrested him for being on the wrong "side of the street." (1 VDRT 400-01.) Nevertheless, he felt that the officer had acted professionally and courteously and that he had received "fair" treatment from the court when he was given probation. (1 VDRT 400-

11

01.)  He also noted that he had a family member and a friend who were police officers.  (1 VDRT 401-02.)

In response to defense counsel's *Batson* motion the following day, the prosecutor explained that he struck Juror No. 8641 because he was a postal employee and the prosecutor did not keep postal employees on the jury.  (2 VDRT 139.)  The prosecutor also explained that he was concerned about the fact that Juror No. 8641 was carrying a book about music and Petitioner was in the music business.  (2 VDRT 139.)  Finally, the prosecutor noted that Juror No. 8641 was chewing gum throughout the voir dire proceedings.  (2 VDRT 139.)

Petitioner does not challenge the underlying facts supporting the prosecutor's justifications.  Nor does he argue that these are not facially neutral reasons for striking the jurors.[7]  He argues, instead, that the prosecutor's reasons were simply contrived to counter Petitioner's *Batson* motion.  He points out, for example, that, though the prosecutor struck Juror No. 8641 in part because he was a postal worker, he did not strike another postal worker, Juror No. 4663.  He argues that, based on this fact alone, the Court should find that the prosecutor's reasons for striking the black jurors were simply pretextual.  (*See* Reply Brief at 7 n.1, 19, 23-24.)  For the following reasons, this argument is rejected.

---

[7]  On their face, these are legitimate, race-neutral reasons for striking a juror.  *See Williams v. Groose*, 77 F.3d 259, 261 (8th Cir. 1996) (striking a juror because he works at the post office is a race neutral reason); *United States v. Jones*, 245 F.3d 990, 993 (8th Cir. 2001) (finding peremptory strike appropriate because juror who "shared the defendant's line of work might be sympathetic to him for reasons other than his culpability"); *Murphy v. Dretke,* 416 F.3d 427, 433-39 (5th Cir. 2005) (affirming district court's denial of *Batson* claim where prosecutor struck black juror who was chewing gum during jury selection, which indicated to prosecutor a lack of respect for or recognition of authority).

A prosecutor's failure to strike a white juror who shares a common trait with a black juror who is struck based on that trait is evidence that the strike was motivated by race. *Miller-El*, 545 U.S. at 241. Petitioner's argument falls flat here, however, because Juror No. 4663, the other postal worker, is also black.[8] *Cook*, 593 F.3d at 818; *see also Jamerson*, 713 F.3d at 1235 (finding comparative analysis did "little to undercut the credibility" of the prosecutor where she allowed one black postal worker to remain, while striking another black postal worker). The fact that the prosecutor struck one black postal worker and did not strike another does not establish bias.[9]

The Court also notes that, though both jurors worked at the post office and both were black, their similarities ended there. Juror No. 4663's sister had been murdered in Los Angeles and the murderer had never been found. (1 VDRT 404-05.) Thus, it would have been reasonable for the prosecutor to assume that she would have been

---

[8]   Juror No. 4663 testified before this Court at an October 2007 evidentiary hearing and, thus, the Court knows that she is black. The hearing, which was held to resolve a juror misconduct claim unrelated to Petitioner's *Batson* challenge, took place years before the Supreme Court issued its decision in *Pinholster*, limiting evidentiary hearings in the district courts to supplement the state court record. (*See* Docket No. 128.) Nothing in *Pinholster* or any other Supreme Court case, however, prohibits the Court from now relying on the fact that Juror No. 4663 was black because the juror's race was apparent to the trial court at the time it made its *Batson* decision. *See, e.g., Jamerson*, 713 F.3d at 1226-27 (finding district court could rely on jurors' driver's license photos showing race of venire members submitted in connection with federal habeas case to conduct comparative juror analysis--even though state appellate court did not have those photos when it denied *Batson* motion--since race of jurors was evident to state trial court when it ruled on *Batson* motion).

[9]   This is especially true in this instance, where the prosecutor may have avoided challenging Juror No. 4663 after the initial *Batson* challenge--even if he had wanted to remove all postal employees from the jury--for fear of drawing another *Batson* challenge.

inclined to look with favor on the prosecution of Petitioner for murder. She also told the court that another sister had been convicted of possessing crack cocaine for sale and had been sent to prison but that she believed that her sister was not "the most truthful person" and had been treated fairly by the system. (1 VDRT 362-65.) This, too, suggests that Juror No. 4663's sympathies might have been with the prosecution in this case.

In contrast, Juror No. 8641 had been arrested and charged with trespassing when he was 18. In explaining the circumstances of his arrest, it appears that he either did not understand what he had done to get arrested or was minimizing it. (1 VDRT 400-01.) Though he professed no hard feelings for the officer who arrested him or for the police in general, it does not seem that he would have been as good a juror for the prosecution as Juror No. 4663. In fact, the trial judge found it "quite apparent" why Juror No. 8641 was challenged by the prosecutor. (2 VDRT 138.)

Petitioner also urges the Court to find that the prosecutor was not being truthful when he claimed that he challenged Juror No. 8641 because he was carrying a book about music but left a musician on the jury. (Reply Brief at 17, 24.) Here, again, the Court does not find Petitioner's argument persuasive. The prosecutor asserted--without challenge from defense counsel or the trial judge--that Juror No. 8641 was carrying a book about music and that he was concerned about this juror because Petitioner was "involved in that business." (2 VDRT 139.) Juror No. 0162, who served on Petitioner's jury, was a retired "professional musician and teacher." (2 VDRT 150.) She played the viola and "taught instrumental music as a substitute teacher." (2 VDRT 150.)

14

1    From this limited information, it is difficult to conclude that
2  the two jurors were so "similarly situated" that rejecting one and
3  keeping the other proves that the prosecutor's stated reasons were
4  pretextual.   Though it is not clear what if any connection Juror No.
5  8641 had to the music business, it was likely a different connection
6  than Juror No. 0162's.[10]   Further, the backgrounds of the two jurors
7  were completely different.   Juror No. 8641 was single, with no
8  children, about 30 years old, and had been arrested for and convicted
9  of a crime.   Juror No. 0162 was married, with seven adult children,
10 retired, and had, apparently, never been arrested or convicted of a
11 crime.   Juror No. 0162 was also not a postal worker like Juror No.
12 8641.   Finally, Juror No. 0162 did not display any obvious signs of
13 disrespect for the process, which, apparently, the prosecutor believed
14 Juror No. 8641 did by chewing gum during the proceedings.   Thus,
15 though there is no requirement that Petitioner show that the jurors
16 share identical characteristics to be similarly situated, *Green v.*
17 *LaMarque*, 532 F.3d 1028, 1030 n.3 (9th Cir. 2008), there is not enough
18 here to suggest that striking one and leaving the other on the jury
19

20      [10]   Petitioner points out that his involvement in the music
21 industry never came up during the first trial (which ended in a hung
   jury) or the second trial, suggesting, it seems, that his connection
22 to the industry was not relevant.   (Reply Brief at 17.)   Though this
   connection never surfaced at trial, it does not mean that the
23 prosecutor was not aware of Petitioner's connection to the music
   industry and was not concerned that that connection might be revealed
24 at trial.   Further, in the context of exercising peremptory strikes,
   relevance simply means a believable and articulable connection between
25 the stated reason and the desirability of the prospective juror.
   Here, concern that a juror might identify with Petitioner because of a
26 shared interest in music was a "relevant" consideration under *Batson*.
   *See, e.g., Williams v. Rhoades*, 354 F.3d 1101, 1109-10 (9th Cir. 2004)
27 (holding fear a juror might identify with the defendant because both
   had young sons was a relevant and race-neutral reason to exercise a
28 strike).

1  establishes that the strike was based on race.  *See Jamerson*, 713 F.3d
2  at 1231 (finding prosecutor's "failure to exercise peremptory strikes
3  against other non-black jurors who shared weak parallels with [the
4  struck] juror . . . ultimately does little to undermine the stated
5  justification" for the strike).

6      The prosecutor's third reason for excusing Juror No. 8641 was
7  that he was chewing gum, which, presumably, the prosecutor interpreted
8  as a sign of disrespect for the court and the proceedings.  The fact
9  that a prosecutor's reasons "may be founded on nothing more than a
10 trial lawyer's instincts about a prospective juror, does not diminish
11 the scope of acceptable invocation of peremptory challenges, so long
12 as they are the actual reasons for the prosecutor's actions."  *United
13 States v. Power*, 881 F.2d 733, 740 (9th Cir. 1989) (internal quotation
14 marks and citations omitted); *see also United States v. Thompson*, 827
15 F.2d 1254, 1260 (9th Cir. 1987) ("Excluding jurors because of . . . a
16 poor attitude in answer to voir dire questions is wholly within the
17 prosecutor's prerogative.").  There is no dispute that Juror No. 8641
18 was chewing gum.  And there is no evidence that other jurors who were
19 not challenged by the prosecutor were chewing gum.  As such, the Court
20 concludes that this was a valid, race-neutral reason for striking
21 Juror No. 8641.

22     In short, after reviewing the record and considering the
23 prosecutor's explanation for striking Juror No. 8641, the Court finds
24 that it was not objectively unreasonable for the state appellate court
25 to accept the trial court's finding that the prosecutor struck this
26 juror for race-neutral reasons.  This finding is bolstered by the fact
27 that at least one of the jurors the prosecutor left on the jury was
28 black.  *See Shirley v. Yates*, 807 F.3d 1090, 1101-02 (9th Cir. 2015)

("That one black juror was eventually seated does weigh against an inference of discrimination, but only nominally so.") (internal quotation marks omitted).[11]

D.   Juror No. 8071

As to the removal of the second black juror, the prosecutor contended that he struck her because, after he struck Juror No. 8641, she gave him a look that suggested that she might have been upset with him for striking the other black juror. (2 VDRT 139.) The trial judge did not simply accept the prosecutor's explanation; he asked the prosecutor to explain further. (2 VDRT 139.) The prosecutor did so, telling the court that he had the impression that Juror No. 8071 believed that he had removed Juror No. 8641 because he was black and that she would hold it against him. (2 VDRT 139-40.) Defense counsel conceded that the prosecutor had previously told him that he struck Juror No. 8071 because she had given him a look. (2 VDRT 140.) This suggests that the prosecutor did not simply make up this explanation to overcome the *Batson* motion. Further, though defense counsel did not see Juror No. 8071 give the prosecutor a look, he agreed that the "natural look on her face" indicated that she was "not the happiest person in the world." (2 VDRT 140.) The trial court subsequently found that the prosecutor's explanation was valid and denied the motion. (2 VDRT 141.) Generally speaking, the prosecutor's reason for striking this juror is a valid, non-race based reason. *See Burks v. Borg*, 27 F.3d 1424, 1429 & n.3 (9th Cir. 1994) (noting prosecutor's

_____

[11]   In fact, there may have been two black jurors on the panel that convicted Petitioner. At the time of the *Batson* challenge, there was a second black juror, a dentist who was described as "pro-prosecution" and identified by the prosecutor as a juror he wanted to keep. (2 VDRT 138.) It appears that he may have been Juror No. 6762, who was left on the jury. (2 VDRT 12-13.)

evaluation of a juror's demeanor, tone, and facial expressions may lead to a "hunch" or "suspicion" that the juror might be biased, and that a peremptory challenge based on this reason would be legitimate).[12]

Petitioner argues that because defense counsel and the trial judge did not see the look that the jury gave the prosecutor the Court should simply reject the prosecutor's explanation and find that he made it up. Neither the evidence or the law supports such a result. *See Sifuentes*, 815 F.3d at 513 ("[T]here is no clearly established Supreme Court rule that a demeanor-based explanation must be rejected if the judge did not observe or cannot recall the juror's demeanor." (internal quotations omitted)). Instead, because a trial court's finding on purposeful discrimination rests largely on credibility, the Court will ordinarily give those findings great deference. *Batson*, 476 U.S. at 98 n.21; *see also Snyder*, 552 U.S. at 477 (noting "race-neutral reasons for peremptory challenges often invoke a juror's demeanor (*e.g.*, nervousness, inattention), making the trial court's first-hand observations of even greater importance"). Petitioner's conclusory allegation that the prosecutor's explanation was pretextual, without more, is insufficient to overcome the trial court's determination that the prosecutor's challenge was not based on race, particularly in the face of the prosecutor's statement to defense counsel before the motion that he had struck Juror No. 8071 because she had given him a look. *See Rice v. Collins*, 546 U.S. 333,

---

[12]   At the time of the peremptory challenge, the prosecutor indicated that he was excusing Juror No. 8048 in seat 11. It appears that he was mistaken because Juror No. 8071 was in seat 11 at the time of the strike and the prosecutor later excused Juror No. 8048 in seat five. (*See* 2 VDRT 109, 149.)

1   341-42 (2006) ("Reasonable minds reviewing the record might disagree
2   about the prosecutor's credibility [regarding the use of peremptory
3   challenges], but on habeas review that does not suffice to supersede
4   the trial court's credibility determination.").

5       Petitioner argues that the trial court did not make a specific
6   credibility finding and, therefore, the Court need not give the trial
7   court any deference.  The Court disagrees.  The trial court heard
8   argument about the subjective nature of the challenge and specifically
9   held that the prosecutor's "responses . . . dispelled any inference"
10  of racial bias.  (2 VDRT 141.)  Implicit in that ruling was a finding
11  that the prosecutor's explanation was credible.  Petitioner does not
12  point to anything in the record that undermines the trial court's
13  credibility determination or suggests that it was unreasonable.

14      In sum, Petitioner has not met his burden of persuading the Court
15  that the prosecutor struck Juror Nos. 8641 and 8071 because of their
16  race.  *See Cook*, 593 F.3d at 826.  Nor has he demonstrated that the
17  state court's rejection of his *Batson* claim was based on an
18  unreasonable determination of the facts in light of the evidence
19  presented.  *See Sifuentes*, 815 F.3d at 501.  Accordingly, Petitioner's
20  *Batson* claims are denied.

21                                    V.

22                              RECOMMENDATION

23      For these reasons, IT IS RECOMMENDED that the Court issue an
24  Order (1) accepting this Final Report and Recommendation, (2) denying

19

1    a Certificate of Appealability, and (3) directing that Judgment be

2    entered denying the Petition and dismissing the case with prejudice.

3           DATED: November 1, 2016.

4

5

6                                   _____

7                                   PATRICK J. WALSH
                                    UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   S:\PJW\Cases-State Habeas\HARROD, J 6598\FinalR&R.Batson.wpd